and we'll turn to the third and last case to be heard on today's day calendar which is 19-2948 Helms Realty Corp. v. City of New York. We'll hear from Attorney Haber, oh Cook, sorry. Good afternoon. May it please the Court, this is Lee Haber Cook, attorney for Helms Realty Appellant. Helms operates the Broadway Hotel which for 75 years has been occupied transiently, that is by people renting rooms for less than 30 days. It has all the safety features required for buildings that have transient occupants and it is configured for transient occupants. For example, its rooms do not have kitchens and the bathrooms are generally shared and accessible through a common hallway. The City of course knows all this and it does not dispute that the Helms building has been used for transient occupancy for decades. The City itself has taken advantage of this fact to house homeless people on a transient basis at this very building. The City has also assessed and collected thousands of dollars in hotel occupancy taxes from the Broadway Hotel. In short, there can be no dispute that the Broadway Hotel satisfies all the safety requirements for transient occupancy and has consistently been used for transient occupancy and that is precisely what the City's own adjudicative agency found when holding unequivocally that Helms was unlawfully operating its building as a transient facility. This ruling can be found in the appendix at 799 through 805. Nevertheless, despite the ruling that Helms was operating lawfully, beginning only 16 days after that ruling, the City served Helms with 27 summonses alleging that it had violated the so-called Airbnb law for advertising room rentals at the Broadway Hotel. The Airbnb law, however, as its name suggests, was enacted to prevent individuals from renting out their residential units to tourists for permanent occupancy and did not have the required fire and safety standards for transiently occupied buildings. Plainly, that is not an issue with the Broadway Hotel. The City's service of these summonses was particularly egregious coming only eight days after its own administrative agency's ruling that Helms could legally use the Broadway Hotel for transient occupancy. The City freely admits that it made a strategic decision not to seek reconsideration of its agency's ruling or challenge it in state court through an Article 78 proceeding. Instead, it decided to simply ignore the agency decision and barrage Helms with Airbnb summonses in the hopes of obtaining more favorable agency determination by redoing the administrative process a second time. In response, Helms filed this federal action alleging that the City's application of violated its First Amendment rights and it sought to have the City enjoined from continuing to harass it by issuing any additional Airbnb summonses. Helms's position was based on the very finding by the City's own agency that Helms's operation of the building for transient occupancy was legally permissible, a finding that Helms believes and still believes is legally binding on the City. A week after this action was filed, the City of New York filed a separate nuisance action against Helms in state court and asserted at the motion to dismiss stage, and now again on appeal, that this federal action should be dismissed in favor of the state court action under the younger abstention doctrine. Helms took the position that abstention was not triggered because the relevant state law issue, the permissible use of the Broadway Hotel, had already been decided by the administrative agency and thus there were no state court proceedings that this action would be interfering with. We submit that there are three fundamental issues presented on this appeal and each of them requires reversal of the District Court's graphic summary judgment to the City. First, the District Court's collateral estoppel ruling was wrong. Long-standing principles of collateral estoppel bar the City from re-litigating the same issue with If the court reverses on this ground as it should, then the only issue for the District Court will be the constitutional issues surrounding the issuance of the Airbnb summonses. Second, if this court agrees with the District Court on collateral estoppel and finds that those principles do not bar the City from re-litigating the transient use issue, then Younger most certainly applies here and we agree with the City that the application of Younger is mandatory. If collateral estoppel is not applied, Younger is triggered and the District Court should have abstained as to the issue of transient use. Given that the state court had now held a 13-day hearing with extensive expert testimony on the state law issue, there is a real risk that there will be divergent decisions on important matters of statutory interpretation. And third, if the court believes that the District Court was correct on both the collateral estoppel issue and the abstention issue, then we believe that the case must be resolved. There are plainly contested issues of fact as to whether Helms is permitted to use its building for transient occupancy. Indeed, the state court has already found this to be the case in ordering the hearings to resolve factual discrepancies at play. Turning to these three issues, it is notable that the City begins and focuses its brief not on addressing the District Court summary judgment ruling, but rather by asserting that the court should quote affirm on the alternative ground of Younger abstention unquote. This flawed approach seeks to use Younger as both a sword and a shield to insulate the District Court summary judgment decision from review. We submit that as a legal matter, this argument is simply wrong. If this court affirmed the District Court's decision as the City requests, the court would not be abstaining. It would be validating the District Court's decision on the merits contrary to the interests of comedy and restraint that underpin Younger. Accordingly, if the court determines that abstention is mandatory, then the District Court decision must be vacated and remanded with instructions to dismiss the case under Younger. In the event that the court determines to review the merits of the District Court's decision, let me turn to the issue of collateral estoppel. There is no dispute that all of the requirements for the application of collateral estoppel are correct. The District Court declined to apply collateral estoppel on the grounds of an intervening change in law. Its sua sponte invoked this rare exception found in their statement, which was not made by either party. However, the first department in Terry Lee on which it relies, decision in Terry Lee on which it relies, and which was actually decided before the ECB decision, does not constitute a change in the legal landscape of the magnitude required for the application of the exception. Terry Lee is a substantial evidence case involving affirmance of an agency decision by an intermediate appellate court of $5,800 in fines relating to a different building with a different specific occupancy. It contains no statutory interpretation or analysis but makes a single declaratory statement in non-binding dicta. Terry Lee is not on the same propositional footing as the cases cited by the city and by the District Court where the decisions relied on a change in law issued by the New York State Court of Appeals or the US Supreme Court. And nor do the handful of Terry Lee ECB decisions cited by the city reflect a sea change in the legal landscape. Each one involved a differently worded certificate of occupancy and each one blindly cited to the Terry Lee decision as authoritative. One minute. In addition, the District Court also noted the regulatory role of the city but in doing so mischaracterized the situation. Helms is not asking to be exempted from any law, nor does it contend that the city should be enjoined from enforcing the law against it, nor is Helms asking for a permanent grant of immunity from the law. Helms asks only that it should not be required to keep meaning of its particular certificate of occupancy. And finally, as to the third issue, even if the District Court was correct in denying preclusive effect to the Helms ECB decision, its grant of summary judgment to the city on transient occupancy was erroneous because in the absence of collateral estoppel, material issues abound on the question of whether Helms's certificate of occupancy allows for transient use. The State Court, in considering this very issue for purposes of deciding the city's preliminary injunction motion, held 13 days of hearings, including testimony from three expert witnesses, which were put forward by the city regarding the legal issues permitted under the Helms certificate of occupancy. As Justice DeAuguste explained, the development of this record was necessary, quote, in order to decide factual discrepancies and resolve by certificate of occupancy. The District Court here should have done the same. In sum, the decision below should be reversed on collateral estoppel grounds, or if not, it must be vacated on younger abstention grounds. And if this court were to disagree with us and hold that neither collateral estoppel nor abstention applies, the District Court erred by resolving the resulting dispute on summary judgment. Thank you. Judge Parker, any questions? As I read Tara Lee and the various appellate division decisions that are built on it, it strikes me as that's a fundamental change in New York law, which calls into question the fundamental change in the law is what the District Court said was that it was relying on the MDL 2010 amendments, and that's what Tara Lee gave the one line about indicative that everyone has cited to. Our position is, and in fact the city's own agency found, that those amendments, regardless of their applications, don't apply to this building because in this building the CO itself does not say it's a Class A building. And in addition, the language of the statute refers to buildings that were being used at that time of the statute for permanent residency. This one was not. So whatever Tara Lee says about the 2010 amendments, it doesn't have application to our particular building. So if you win on this theory, you get to basically use your SRO hotel as an Airbnb, and everyone else out there in the city who has a similar CO doesn't get the benefit of that? Well, that was an argument that the city has made, and Judge Hellerstein considered it, but that very argument was rejected in the U.S. v. Stouffer, which is cited in our papers. All that we, all that this does is bind, it binds helms, and then, you know, other buildings will litigate with the city as other buildings do. But the Supreme Court in the Stouffer case said, look, where you have, where you have mutual collateral estoppel, then those you know, someone could pop up at any time and say there's a new decision out there, and you have to, I have to re-litigate the meaning of my certificate of occupancy. So our position is that once it's established for this building, then that's the end of it as to this building. In terms of non-mutual collateral estoppel, that's a different issue. Is the collateral estoppel analysis in this case driven by federal collateral estoppel principles or state collateral estoppel principles? State. And remind me how they differ? I'm not, I'm not certain because we, I think we've think that we, we agree that it's a state law collateral estoppel issue, and that those are the cases that we've relied on. Thank you. Judge Rodney? I have no questions, thank you. Okay. So we'll hear from Mr. Platon. Yes, good evening. My name is John Platon, and I'm the attorney on behalf of the Appalachians. This suit seeks to block New York City's years-long effort to stop the Helms building, which has long been home to low-income tenants, from operating as an illegal hotel rented on a nightly basis to tourists. The district court should have abstained from hearing the case to avoid interference with ongoing enforcement proceedings in state court, and this court should resolve the appeal in favor of abstention. If the court chooses to permanent immunity from state law based on an outlier and now overruled administrative decision, and the court rightly held that state law forbids transient occupancy of the Helms building, the statutory text, case law, and legislative history leave no room for doubt that SRO buildings like this one may not operate as hotels. Returning first to abstention, younger abstention is mandatory here because Helms is seeking to declare unconstitutional a statute that the city is now enforcing in a state court abatement action. The state action is a civil enforcement proceeding as to which abstention is required. It seeks to enjoin sanction and deter ongoing violations of state law. It was brought by the city to enforce state law under delegated powers. I'll note that the legislature charged the office, the mayor's office of special enforcement, one of the defendants here, and the plaintiff in the state case with sole enforcement authority in New York City for the Advertising Act, and the city enforces the multiple dwelling law generally. The state enforces the state law, and the action in state court resulted from investigations and culminated in formal charges. There were many inspections and hundreds of formal notices of violation issued for violations of state law, including the multiple dwelling law, and these are all the features that the Supreme Court in Sprint v. Jacobs identified as denoting a civil enforcement proceeding as to which general abstention applies. And further, there is no doubt that this suit would interfere with the city's ability to pursue the state action. Helm seeks a declaration and an injunction against the city's enforcement of the Advertising Act as applied to it, which would preclude state litigation of that claim. The city is pursuing claims under the Advertising Act in the state case. And further, as my adversary noted, there's a risk of divergent opinions between the two cases. Both turn on questions of state law, and it would create potentially a conflict to have two different rulings from two different courts on them. So, for all these reasons, this is the type of case as to which abstention is mandatory. And to the extent that the middle sex factor is still controlled here, they also favor abstention. The state case is ongoing. There are pending motions in front of the court now awaiting decision. There are important state interests at stake, most notably the ongoing state effort to preserve low-income housing and to protect tenants from displacement and to preserve the character of neighborhoods that aren't properly zoned for hotels. And finally, the plaintiffs here can raise their federal claims in state court. And indeed, they have raised their First Amendment challenge at the defense. I'll just briefly touch on this point about whether we're – about urging an alternative – this as an alternative ground for affirmance. And just to be clear, I think that Helms is mistaking the affirmance of the judgment for affirmance of the district court's decision and order. Our position is that since we prevailed below and the district court entered judgment in favor of the city, the proper way for resolving this case if the court concludes that abstention was warranted is to affirm on the alternative ground of abstention. That's how this court described it in the University Club case, another case where the city was a party. However, the court held that the district court should have resolved the case on the ground of abstention rather than reaching the merits and described it as that the city was urging abstention merely as an alternative ground for precisely what the district court did, dismissed the complaint. And we're not seeking to preserve the decision. Of course, we believe Judge Hellerstein got this exactly right, but we understand that the decision should not – he should not have reached the merits, and we don't intend to try to preserve the ruling on the merits for the future. But we're urging affirmance on the If the court does reach the merits, it should affirm, however. As to the issue preclusion question, the threshold question, the overruled Helms administrative decision does not bar the city from pursuing later violations of the Advertising Act and the multiple dwelling law. Issue preclusion under New York law, which controls here, is a flexible doctrine that turns on realities of the litigation, and it yields where the results would be There's a couple of principles that are determined here. One, New York doesn't apply issue preclusion to questions of law, and we are speaking about a question of law here, which is the proper construction of multiple dwelling law as applied to SRO buildings like the Helms building. And second, New York doesn't allow an overruled decision to prevent future enforcement efforts. As the U.S. Supreme Court said in Herrera – Wyoming v. Herrera, applying the same principle – a repudiated decision does not retain preclusive force. And the Tara Lee decision undoubtedly repudiated the Helms decision's reasoning. And subsequently, the ECB, the city administrative tribunal overruled Helms. So there's really nothing left of the Helms decision. It's been repudiated by a higher court, by the state that issued it in the first place, the ECB. And so on both counts, there's been a change in law that requires that issue preclusion not be applied prospectively to prevent the city from enforcing the law going forward. This is a principle recognized by the U.S. Supreme Court, by this court, by the New York Court of Appeals. So regardless, it is an issue of state law, but the same principle is applied in the federal courts as well. And there's sound policy reasons for not applying issue preclusion here. I mean, the first, as Judge Parker noted, essentially what Helms is seeking is to be put in a different position than every other building that has the same type of certificate of occupancy, that it would be allowed to continue operating on a nightly basis as a hotel while all of its competitors under the new law wouldn't be. That's precisely the type of thing that the restatement identifies as a concern. And the U.S. Supreme Court, in the Sonnen case that we cite in our brief, noted inequities among taxpayers as a particular reason why an intervening change in law should prevent application of issue preclusion. Further, there's the concern for the fair administration of the law, binding the government in perpetuity to an incorrectly decided decision. This recognizes the need for the government to have flexibility in terms of choosing how it litigates, when it takes an appeal from an adverse judgment, and recognizes that the limited resources of the government, the court's limited docket, it's not possible always to bring an appeal from every adverse ruling. And when there's been an intervening change in the law, that ruling shouldn't stand in perpetuity as a shield against enforcement under the law. Just to sort of address the question of the precedential effect of Tara Lee, I agree, Judge Parker, that it's clear that this was a fundamental change in the law. Helms' position is quite extreme. As my adversary said, they don't even consider the Tara Lee decision to be binding on the Tara Lee building itself. But it's just simply not a correct understanding of New York law and New York administrative law to take that position. Legal pronouncements in an administrative review case where there were standards of review and substantial evidence absolutely do have precedential effect. The Tara Lee decision did make a pronouncement of law. It had to, although it didn't explicitly designate two sections where it announced the law and then applied it, it did those together, but the court had to determine what the law was in order to apply it. And the court made clear how you analyze the specificity of occupancy. It made clear what considerations apply, and then it applied them to the Tara Lee building, which, as I'll discuss in a second, is similarly situated to the Helms building. So that is a change in the law. And if there were any doubt on that score, that the fact that the ECB subsequently adopted the Tara Lee ruling and overruled Helms should also represent a change in law. So one way or the other, the decision has no more preclusive force, no more force of law, and should not bind the city going forward. And I just want to mention before moving on from this, my adversary again stated that the change in law exception is a rare exception. My apologies, a rare exception. That's not the case. If you look at the restatement, the phrase rare exception is from comment G, which is discussing a different provision for not applying collateral estoppel, a different exception to collateral estoppel. The change in law exception is not described as a rare exception. And indeed, you'll see that it's applied many times in the case law. And there's not a particularly high bar set for it in the way there is for the under comment G, the sort of catch-all exception that the restatement's discussing there. So there's not a – the court should apply this exception, recognize it where it's appropriate without some sense that somehow it has to meet a high threshold of proof. Finally, just briefly on the merits, I know my time is almost up. The Helms Certificate of Occupancy marks it as a Class A dwelling that can only be occupied on a permanent basis, meaning at least 30 days. The Certificate of Occupancy says that it's an old-law tenement, single-room occupancy. And two provisions of the Multiple Dwelling Law tell you how to understand this. First, tenements are Class A dwellings under the Multiple Dwelling Law. And second, the Multiple Dwelling Law says that any use of any of the Class A dwellings for SRO use doesn't affect its Class A designation. And when you put that together, you have a tenement building, single-room occupancy. That's Class A. And that's – One minute. It's straightforward from the text. It's also how the Appellate Division has construed it. The 330 Continental decision construed a nearly identical Certificate of Occupancy that's a new-law tenement, single-room occupancy and said it was Class A because it was a tenement. The Tara Lee decision involved a Certificate of Occupancy that Helms has said is functionally identical to Helms' and construed that to be a Class A dwelling that could only be used for permanent use and not as a hotel. The legislative history makes clear that the purpose of the 2010 amendments was to prohibit transient occupancy of PAC law SROs like the Helms building. And, in fact, if you look at the legislative history of the bill jacket for the law, there's a report that specifically mentions Helms. The fact that the state court has held hearings on this – hearings on the issue just reflects that the district – that the state judge is under misimpression. And, ultimately, the state courts will get it right just as they did in Tara Lee. And I am happy to take any questions that the court should affirm either on the ground of abstention or on the merits. Uh, Judge Parker, any questions? Oh, no, I don't. Judge Raji? No, thank you. All right. So, uh, Attorney Cook has reserved three minutes. Rebuttal. Yes, just a – just a couple points. Um, the city continues to argue court finds that collateral estoppel, um, does not bar the city from relitigating its position. Um, but in that instance, then the proper course would be to vacate the lower court opinion and remand, um, for dismissal. And the difference between this case and the University Club case is that in that case, the court dismissed at the outset of the case. It was a 12B6 case. The court dismissed the case without prejudice. And the Second Circuit then said, you know, we're – it's an alternative ground because we're doing precisely what the district court did, which was to dismiss the complaint. Here, we're in a different posture because judgment was entered in favor of the city. If the court agrees that abstention is appropriate here, then what should happen is the summary judgment decision is vacated and then, um, the action is remanded for dismissal without prejudice. Secondly, um, again, we would say that Terry Lee is not a change in the law. It's a substantial evidence decision, as the state court has – has indicated. And as we indicated in our papers, the state court has actually said that it's dicta and it's not binding, and it might be persuasive. He'll consider that when he issues his own opinion on the collateral estoppel issue and the preliminary injunction that the city has brought. And most fundamentally, though, there are clearly issues of fact here. The experts that the city put on in the state court case said you have to look at the certificate of occupancy as a whole, which requires a hearing, as the it simply cannot be decided based on one line of the certificate of occupancy, as the city seeks to do here. And I would finally note that the, um, that in fact, um, the district court specifically recognized that the certificate of occupancy here does not use the word Class A dwelling as the one in Terry Lee did. Um, and I'm happy to answer any other questions. Judge Parker, any questions? Uh, no, I don't. Judge Rodger? None. Thank you. Accordingly, we will reserve the decision. And having completed our arguments for today, we will adjourn court.